## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

ELIZABETH GRADY SCHOOL OF
ESTHETICS AND MASSAGE
THERAPY, ELIZABETH GRADY
FACE FIRST, INC., and EGFF
HOLDING CORP.

)
)
)
)
)
)
)
)
)

Civil Action No.: 1:23-CV-12461

             Plaintiffs,

    v.

DR. MIGUEL CARDONA, in his
Official Capacity as SECRETARY of the
UNITED STATES DEPARTMENT OF
EDUCATION

)
)
)
)
)
)
)
)
)

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF

## INTRODUCTION

1.      Plaintiff Elizabeth Grady School of Esthetics and Massage Therapy ("School")
provides educational programs qualifying graduates to pursue licensing in the Esthetics and
Massage Therapy professions.  Many of the School's students are from low to moderate income
families or neighborhoods and seek out the School's programs as a means to develop a stable and
profitable career.  At least 85% of the School's students rely on student financial assistance
programs authorized pursuant to Title IV of the Higher Education Act of 1965, as amended, 20
U.S.C. §§ 1070 et seq. ("Title IV, HEA programs") and administered by the Department of
Education ("Department" or "DOE") to attend the School.  Pursuant to 20 U.S.C. § 1002, the
School has been an eligible institution to receive student financial assistance for over 30 years.

2.      On or about November 1, 2021, the then-Chief Financial Officer (CFO), Kathleen DeNicola, acquired the School from its prior owner upon his retirement.  The School notified the Division of Professional Licensure of the Commonwealth of Massachusetts of the Change in Ownership, but did not formally notify the Department, believing that it constituted an exempt transaction under 34 C.F.R. § 600.31(e).

3.      On or about September 30, 2022, the School was placed on Heightened Cash Monitoring 2 ("HCM2") by the Department.  Under Heightened Cash Monitoring 2, the School makes disbursements to students from its own institutional funds, and then must submit a Reimbursement Payment Request for those funds to the Department.  Prior to this date, the School was permitted to request for payment in advance of disbursing funds to students.

4.      In October of 2022, the Department inquired as to the Change in Ownership, and Ms. DeNicola provided all information requested.  The School, in reliance on its eligibility in Title IV, HEA programs, continued to enroll students for its programs.  However, when Ms. DeNicola submitted for reimbursement for $155,565.40 on January 8, 2023, the Department failed to process the request.

5.      From January 2023 through May 2023, Ms. DeNicola repeatedly requested an update as to the processing of her request.  Because the Department will not accept the submission of another reimbursement request until the pending request has been processed, and because Ms. Nicola was required as an eligible institution to continue offering financial assistance to students who apply for such assistance, the School is currently owed approximately $1.3 million from the Department.

6.      As a result of the failure to reimburse the School, the School's financial condition has been impaired.  The School has not received reimbursement since October 2022, which Ms. DeNicola advised the Department.

7.      On May 12, 2023, the Department advised the School that it had lost eligibility for Title IV, HEA programs as a result of its change in ownership ("CIO") and that any Title IV, HEA funds received by the School since November 1, 2021 constitute institutional liabilities. On May 16, 2023, the Department issued a stop payment order, prohibiting the School from accessing or drawing down on any HEA funds.  It also advised the School that it may be liable for any funds disbursed after the CIO.

8.      On May 30, 2023 the School requested a hearing pursuant to 34 C.F.R. § 668.86(b).  Pursuant to 34 C.F.R §§ 668.86(b)(3) and 600.41(c)(1), the School's eligibility and funding may not be terminated during the pendency of the hearing.  The School also requested a meeting with the Department regarding the loss of eligibility determination, and sent questions to the Department, per its instruction, regarding when it would be heard, among other pressing issues.

9.      More than three months after the School requested a hearing, on September 5, 2023, the Department advised the School that "[a] loss of Title IV eligibility following a CIO is neither a limitation or termination, and therefore is not subject to the Subpart G requirements for a hearing."  The Department's determination that the School is not eligible for funds, ordering that it receive no further funds, and pronouncing that it may be liable for disbursement of aid postdating November 1, 2021, is in effect a limitation on its participation in HEA programs.  The Department has deprived it of the process afforded under 34 C.F.R. § 668.86(b).

10.     While the Department has permitted the School to apply for provisional reinstatement, it has imposed requirements which constitute further limitation on the School's participation in Title IV, HEA programs.  The Department's failure to reimburse the School, unreasonable delay in reaching a decision, and denial of any process to the School by which it could challenge the Department's determinations, has impaired the financial health of the School.  The Department's inaction and late determination of "non-eligibility" have jeopardized the ability of current students to complete their programs and pursue their careers, and all but eliminated attendance by prospective students reliant on student financial assistance.  In addition, the Department's violations created problems for students attempting to complete required exit counseling and for the School to perform required audits, which are necessary for eligibility. The School has been forced to seek declaratory and injunctive relief to require the Department to reinstate its Title IV participation and to process and pay the School's pending and outstanding reimbursement requests to prevent its closure.

## PARTIES

11.     Plaintiff Elizabeth Grady School of Esthetics and Massage Therapy is a division of plaintiff Elizabeth Grady Face First, Inc., a corporation with its principal place of business at 22 Boston Ave, in Medford, Massachusetts.  Elizabeth Grady Face First, Inc. ("EGFF") is a subsidiary of  plaintiff EGFF Holding Corp. ("EGFF Holding Co.").  Ms. DeNicola is the current President of EGFF and EGFF Holding Co.  The School is approved and licensed by the U.S. Department of Education, the Massachusetts Division of Professional Licensure Office of Private Occupational School Education, and the Massachusetts Board of Cosmetology, and accredited by the National Accrediting Commission of Career Arts & Sciences, Inc. ("NACCAS").

12.     Defendant Dr. Miguel Cardona, in his official capacity as the Secretary of

Education (hereinafter the "Secretary"), is the responsible official for the United States Department of Education (hereinafter "Department"), an executive agency of the federal government of the United States which, *inter alia,* administers student financial assistance authorized pursuant to Title IV, HEA programs.

## JURISDICTION AND VENUE

13.     Jurisdiction over this action is founded on 20 U.S.C. § 1082(A)(2) and 28 U.S.C. §§ 1331, 2201, 2202.

14.     Venue in this judicial district is proper by virtue of 28 U.S.C. § 1391(e).

## FACTS

15.     The School has been eligible for student financial assistance through Title IV, HEA programs, for over 30 years.

16.     Approximately 85% of students have utilized student financial assistance through Title IV, HEA programs to help fund their education through the School.  The School's students go on to obtain positions in esthetics or massage therapy.

17.     Until September 30, 2022, the School participated in Title IV, HEA programs under the "advance payment method." See 34 C.F.R § 668.162(b).  Under the advance payment method, an institution of higher education calculates the amount of federal student aid it will disburse to students and then submits a request for funds to the Department.  The Department then reviews the request and, if it accepts the request, DOE initiates a funds transfer to the institution of higher education which then must distribute the funds to students.  See id.

18.     Kathleen DeNicola served as the CFO of EGFF Holding Corp. Inc, Elizabeth Grady Face First, Inc., and the School from 2016 through 2021, and was intimately involved in the day-to-day management of the company, including the School.

19.     On or about September 8, 2021, Ms. DeNicola entered into an Agreement for Stock Purchase with John P. Walsh, the prior owner of EGFF Holding Corp, to acquire EGFF Holding Co. and its companies, including the School, as of November 1, 2021.

20.     Mr. Walsh retired from his positions at the School following the sale.

21.     On May 31, 2022, Ms. DeNicola submitted School Owner Information to the Division of Professional Licensure of the Commonwealth of Massachusetts, reporting to be the owner of the School.  Ex. A.

22.     On or about September 2022, the Department became aware of the sale of the School to Ms. DeNicola because it received a report from the NACCAS.

23.     During negotiations that began in 2018, more than two years prior to the sale, it was understood between Mr. Walsh and Ms. DeNicola that she would receive a significant discount on the purchase price of EGFF Holding Co., having been a current employee holding a management position at the School.  This understanding drove Ms. DeNicola to purchase EGFF Holding Co., and Ms. DeNicola benefited from this understanding when she ultimately purchased EGFF Holding Co. in 2021 at a significant discount to its appraised value.  The School and Ms. DeNicola believed that Ms. DeNicola's option to purchase EGFF Holding Co. at a discount not available to other potential bidders constituted a beneficial interest.

24.     Accordingly, the School did not notify the Department of the change in control at the time because it believed Ms. DeNicola's purchase constituted an exempt transaction under 34 C.F.R. § 600.31(e).

25.     In September of 2022, Elizabeth Grady submitted its annual compliance audit and audited financial statements for its fiscal year ending December 31, 2021, which included information regarding the sale of the School from Mr. Walsh to Ms. DeNicola.

26.     On or about September 30, 2022, the School was placed on HCM2 by the Department.  Under HCM2, the School makes disbursements to students from its own institutional funds, and then must submit a Reimbursement Payment Request for those funds to the Department.  A Payment Analyst must approve the submitted disbursement records, and draw down cash up to the available balance for the school. The available balance is the difference between the school's Current Funding Level ("CFL")[1] and their net drawdown amount for a given award year and program. The U.S. Treasury transmits funds electronically to a school's bank account.

27.     Under HCM2, a school may only submit one request for reimbursement during any 30-day period.  The Department will not accept a request for reimbursement if there is a request pending.

28.     In October 2022, the Department requested information from Ms. DeNicola regarding the change in ownership which she provided.

29.     In January and February 2023, the Department emailed Ms. DeNicola inquiring about the change of ownership.  Ms. DeNicola provided all information and documents requested and was told that it would be reviewed and the Department would get back to her.

30.     At no time did the Department notify Ms. DeNicola that the School was at risk of losing its eligibility to participate in Title IV, HEA programs.

31.     The School, in reliance on its eligibility in Title IV, HEA programs, continued to enroll students for programs.  On January 8, 2023, the School submitted a claim for

---

[1] The CFL is the total (cumulative award year to date) amount of funding authorization given to a school at any point of time.  A separate CFL is maintained for each program by award year.

reimbursement to the Department for $155,565.40 which the Department failed to take any action on.

32.     Two other reimbursement requests by the School, for $227,115 and $198,189, respectively, totaling $425,304, have been preliminarily approved by Federal Student Aid ("FSA").  However, because the Department will not accept the submission of another reimbursement request until the pending request for $155,565.40 has been processed, those requests have not been submitted to nor accepted for payment processing by the Department.

33.     As it is required to do under the HCM2 program, and in good faith reliance on its eligibility, the School has advanced approximately $606,842 -- out of its own funds -- to students that required federal student aid to attend its programs.  The School also continued to obligate funds under the federal student assistance programs to eligible students.  The School is currently owed approximately $1.3 million from the Department.

34.     At no time between October 2022 and May 11, 2023, did the Department notify Ms. DeNicola that the funds she was advancing to students in compliance with HCM2 and for purposes of attending the School would not be reimbursed by the Department.

35.     Between February and May 2023, Ms. DeNicola repeatedly requested updates from the Department because the Department had failed to process any of the School's reimbursement requests.

36.     On February 8 and 9, 2023, Ms. DeNicola emailed Jaqueline Blue, an Institutional Review Specialist with the Department of Education, requesting a phone call.  Ex. B, pp. 2, 3.  Ms. Blue responded, stating, "I've reached out to my supervisor and another team member.  We are trying to find out what happened.  I'll get back to you as soon as I can."  Ex. B, p. 1.  She

then emailed Ms. DeNicola again, advising her to call Cheryl Marotta, another Institutional

Review Specialist.  Ex. C, p. 1.

37.     On February 28, 2023, Ms. DeNicola responded to a question posed by the

Department regarding EGFF Holding Co.'s Bylaws, and stated "Please let me know I am all set."

Ex. D.

38.     On March 21, 2023, Ms. DeNicola emailed Ms. Blue, requesting a phone call.

Ms. Blue responded that she was "pretty busy" but that she could "contact you after 3pm if your

schedule allows."  Ex. E, pp. 9, 10.

39.     On Friday, March 24, 2023, Ms. DeNicola again emailed Ms. Blue, stating "I had

hoped to hear from you on Wednesday with an update. Just checking back in."  Ex. E, p. 9.

40.     On March 27, 2023, Ms. Blue responded, apologizing for not getting back to Ms.

DeNicola and stating, "[t]he reason for the delay is that we were discussing potential solutions to

alleviate the back and forth you've been experiencing between Cheryl [Marotta] and myself.  As

such, going forward, Cheryl will handle any and all remaining questions/processes."  Ex. E, p. 8.

That same day, Ms. DeNicola emailed Ms. Marotta inquiring about her open questions.  Id.

41.     On March 28, Ms. Marotta responded stating, in part:

> Elizabeth Grady's compliance audit finding of a CIO is currently under review and
> until a determination has been issued for the CIO issue/finding the school's HCM2
> packet processing has been placed on hold.
>
> Once a determination has been made for the CIO finding, Elizabeth Grady School of
> Esthetics and Massage Therapy OPEID 02523900 will be notified by the Department.
>
> Once the determination regarding the CIO is made and the finding closed, the HCM2
> packet submitted January 8, 2023, will be reviewed and a determination made, and
> Elizabeth Grady School of Esthetics and Massage Therapy OPEID 02523900 under
> separate cover will be notified by the by the [sic] Department of that determination.

Ex.  E, pp. 6-7.

42.     On April 3, 2023, Ms. DeNicola again emailed Ms. Marotta, inquiring, "Who can I call on the below matter.  I was told the issue was resolved and my Financial aid was being processed.  Please provide me with contact information including email and a telephone number. In addition the 2021 audit was uploaded and accepted." Ex. E, p. 6.  In response, Ms. Marotta stated. "I am not sure what issue has been resolved. … Your claim packet processing was started, until the audit finding of a change in ownership is resolved, your claim packet is on hold and will be processed accordingly once the finding is resolved." Ms. DeNicola thanked her and again inquired, "What I am trying to find out is who is actually working on it and who I can call.  This [i]s financial aid going back to October." Id., p. 6.  Ms. Marotta responded that, "[t]he information you have received is the most current information as of today. You will be notified when we have additional information for the school."  Id.  Ms. DeNicola reiterated, "I was just looking to speak to someone to try to get things moving.  It has been a very long time. Thank you for the information."  Id., p. 5.

43.     On April 5, 2023, Ms. DeNicola emailed Ms. Marotta again stating,

I have second and third files now.  Since the first one was submitted 1/8/2023 can I get permission to submit these two?

Thank you very much for your consideration.

FYI, I spoke to Steven and he said there is nothing in their system that would be holding up my payments.

Thank you,
Kathy

Ex. E, pp. 3-4.  Ms. Marotta responded that day, stating, "I would not submit a new claim until the current claim is completed.  I do not know who Steven is as he does not work in our office." Id., p. 3.

44.     On April 7, 2023, Ms. DeNicola emailed Jennifer L. Desmarais with the Department requesting a phone call.  Ex. F.  Ms. Desmarais responded stating, "I can certainly schedule a meeting however, if this is in regards to the Change in Ownership Finding.  That is exclusively being reviewed by an eligibility analyst who has been in contact with your institution (to my knowledge) and that finding is being reviewed through that process."  Id.

45.     On April 27, 2023, Ms. DeNicola emailed Ms. Marotta again:

Hello Cheryl,

I am reaching out again as you did not respond to my inquiry last week.  I again need to check status Of the billings.  In addition I need to know who I can call related to whatever reason they are not being Processed.  I have not received financial aid since October and some of these students have already graduated.

Thanks,
Kathy

Ex. E, p. 3.

46.     Ms. Marota responded on May 1, 2023 stating, in part, that "The audit finding of a Change in ownership (CIO) has been referred to the Eligibility Group for assignment. The CIO issue is in the Eligibility queue awaiting to be assigned for review and processing.  A timeframe for this issue cannot be determined at this time.  Until this issue is reviewed and processed the claim packet submitted on January 8, 2023, will remain on hold."  Id., pp. 2-3.

47.     Ms. DeNicola responded via email on 10:57 am that same day, stating

Thank you Cheryl,  I just need a person to call. As you can imagine this is becoming problematic.

The owner holding. Did not change and I submitted all of that documentation when Ms. Blue requested it.

I'll await a response

Thank you,
Kathy

Ex. E, pp. 1-2.  Ms. Marota responded at 11:05 am, stating, "Until the Change in ownership is

assigned and reviewed, there is no one who will have any additional information."  Id., p. 1.

48.     On May 5, 2023, Ms. DeNicola emailed Ms. Marotta:

> I am wondering if I can get contact information for the eligibility analysist [sic]
> This has been and ongoing issue that is holding up disbursement of financial
> Aid.

Ex. G, pp. 1-2.

49.     On May 12, 2023, the School received email correspondence from Cheryl

Marotta, Institutional Review Specialist, U.S. Department of Education ("May 12 Email").  Ex.

H.  The email attached a letter dated May 11, 2023 from Vanessa D. Dillard, DOE Division

Chief, that notified the School -- for the first time -- that it had "lost eligibility to participate in

the student financial assistance programs authorized pursuant to Title IV of the Higher Education

Act of 1965, as amended, 20 U.S.C. §§ 1070 et seq. ("Title IV, HEA programs") on November

1, 2021" and that "[t]he Department has placed Elizabeth Grady on Stop Pay as a result."  Ex. I,

p. 1.   The letter stated that the reason for the termination was because the change in ownership

was not reported to the Department at the time it occurred.  Id.

50.     The termination letter also stated that "if Elizabeth Grady has received Title IV,

HEA funds since November 1, 2021, and Elizabeth Grady is not entitled to those funds under the

provisions of 34 C.F.R. § 668.26(d), those funds will constitute institutional liabilities."  Id., p. 6.

51.     The May 12, 2023 email also attached another letter dated May 11, 2023 from

Jennifer Uhlir, Branch Chief, New York/Boston School Participation Division, denying the

School's Claim #8129 for reimbursement in the amount of $155,565.40.  Ex. J.

52.     On May 16, 2023, the School received correspondence from Monique Hart, MPA

Management & Program Analyst, U.S. Department of Education stating that "your institution

has been placed on STOP PAYMENT due noncompliance *[sic]* with grant award funds. As a result, your institution is prohibited from accessing or drawing down any remaining Higher Education Emergency Relief Funds (HEERF) funds." Ex. K.

53.     Since January 2023, the Department has failed to make payment or process three claims for reimbursement from the School, totaling $580,869.40.  Approximately $700,000 awaits submission to FSA for approval.

54.     On May 28 and 30, 2023, the School's counsel emailed Ms. Dillard and requesting to speak with the DOE regarding the loss of eligibility determination.  Ex. L, pp. 5, 6. In response, Ms. Dillard requested written notice authorizing the undersigned's representation of the School and a "list of questions in written format on behalf of Elizabeth Grady."  Id., p. 4.

55.     By letter dated May 30, 2023, the School requested a hearing under 34 C.F.R. §§ 600.41(c)(1), 668.86(b), and 668.92(a) via email and overnight mail.  Ex. M.

56.     On May 31, 2023, the DOE confirmed receipt of the School's Request.  Ex. N.

57.     On June 16, 2023, the School provided written notice to the Department, authorizing the undersigned's representation of the School.

58.     On June 21, 2023, the School's counsel emailed Ms. Dillard with a list of written questions, per her instructions.  Among those questions were the following:

> 1.  As you know, the School was on heightened cash monitoring prior to the DoE's Loss of Eligibility letter. Before the letter, the School had a reimbursement request pending before the DoE, and a DoE representative asked the School not to submit other reimbursement requests pending the Loss of Eligibility determination. Under 34 C.F.R. § 668.86(b), the termination is not effective if the DoE receives a request for a hearing or written material indicating why the limitation or termination should not take place.  The School submitted a request for hearing with an explanation for why the School should not have lost its eligibility. In view of the regulatory pause on the eligibility determination, what other information does the DoE require to process the pending reimbursement request and may the School submit the other pending requests?

2.   The School requested a hearing by letter, dated May 30, 2023. When can the School expect to have its hearing scheduled to address the issues raised in the DoE's Loss of Eligibility letter?

3.   At the moment, I understand from the School that it does not have access to its financial aid system and information. The School has an audit due on or before June 30, 2023, and requires access. Can access be given to facilitate the audit?

4.   I also understand from the School that the lack of access has also prevented graduating students from completing their required exit counseling. The School has received inquiries from students and staff, alike, regarding students' abilities to complete exit counseling? Is there another message that can be conveyed to the School's students regarding the exit counseling requirement?

Ex. L, pp. 3-4.

59.   The School did not receive a response to its June 21, 2023 email.  On July 5, 2023, the School's counsel emailed Ms. Dillard again inquiring when the School could expect a response from the Department.  Ex. L, pp. 2-3.

60.   On July 12, 2023, the School's counsel again emailed Ms. Dillard, stating, in part "I would greatly appreciate your immediate attention to the questions in my June 21st e-mail below, especially those about access to facilitate the audit and student exit counseling.  The School is trying to make every effort to comply with certain requirements and deadlines imposed by the DoE, but DoE's decisions are preventing the School from fulfilling these requirements." Ex. L, p. 2.

61.   On August 8, 2023, Ms. DeNicola emailed Ms. Dillard and her attorney inquiring if there had been any response "as it has been almost a month."  Ex. L, pp. 1-2.  In her email she states, "I have students that [c]annot do exit counseling, I have new students that I cannot offer aid too  etc.  This is a big problem."  Id.

62.     Ms. Dillard responded to the email on August 8, 2023, stating, in part, "Rather than respond in a piece-meal fashion, we are planning to share our response to all the questions listed below no later than next week.  If we can respond prior to that time, we will let you know. If you have any additional questions in the interim, feel free to forward them to my attention." Ex. L, p. 1.

63.     Despite Ms. Dillard's August 8 email, the School waited for a response for four more weeks.

64.     On August 23, 2023, the School's counsel emailed Ms. Dillard again, stating, "Dear Ms. Dillard: You had indicated in your e-mail below that you would be responding to all of the School's questions no later than last week.  We still have not received any information or responses from the Department.  Can we please schedule a time to discuss next steps and solutions in the next day or two?"  Ex. L, p. 1.

65.     On September 5, 2023, the Department finally responded to the School's questions.  In response to the School's first question concerning its reimbursement request  while its hearing was pending, the Department responded as follows:

> **When an institution undergoes a change of ownership that results in a change in control, it automatically loses eligibility under the HEA (20 USC 1099c(i)). See also 34 C.F.R. 600.31(a)(1).  An institution may continue to participate, but only if it submits the documentation required by 34 C.F.R. 600.20(g)(3) and (h)(3) (regulations effective as of July 1, 2023).  Thus, Elizabeth Grady School of Esthetics and Massage Therapy (Elizabeth Grady) lost Title IV eligibility on November 21, 2021 because it ceased to qualify as an eligible institution upon the change in ownership and control, 34 C.F.R. § 600.31(a)(1), and it failed to meet the requirements for continued participation.  A loss of Title IV eligibility following a CIO is neither a limitation or termination, and therefore is not subject to the Subpart G requirements for a hearing.  If Elizabeth Grady seeks to reestablish eligibility so it can be reinstated to participate in the Title IV, HEA programs, Elizabeth Grady must meet the requirements of both 34 C.F.R. § 600.20(g)(3) and (h)(3) (regulations effective as of July 1, 2023) and be approved by the Secretary of Education to sign a new Program Participation Agreement under 34 C.F.R. Part 668, Subpart B.**

Ex. O, pp. 8-9.

66.    According to the correspondence, the Department would not provide the School  a

hearing in accordance with 34 C.F.R. § 668.86(b)(3) & (4) and § 668.89.

67.    The Department also identified the requirements the School must meet in order to

be reinstated as an eligible institution:

> **As a condition for reinstatement, Elizabeth Grady must comply with all
> requirements of 34 C.F.R. §§ 600.20(g) and (h):**
>
> - **Documents and information required by 34 C.F.R. §§ 600.20(g)(3) must be
>   submitted within 10 business days of submission of the reinstatement
>   application.**
> - **If ownership is reported on the reinstatement application which differs from
>   the pre-November 1, 2021 ownership structure and John Walsh's ownership
>   remains below 50% (as a result of the November 1, 2021 transaction or any
>   subsequent transfer of shares), a new owner letter of credit ("LOC") or cash
>   surety will be required for any new shareholder who cannot provide two
>   years of audited financial statements. The amount of the required new owner
>   financial protection will be 25% of the prior year's Title IV funding based on
>   their combined ownership percentage.**
> - **The New Owner LOC or cash surety must be submitted within 10 business
>   days of submission of the application for reinstatement.  Prior to submitting
>   your reinstatement application, please contact Rhonda Puffer at
>   Rhonda.Puffer@ed.gov for the amount of the required financial protection.**
> - **Documents required by 34 C.F.R. §§ 600.20(h)(3) should be submitted no
>   later than the last day of the month following the month the reinstatement
>   application is submitted.**
> - **The Same Day Balance Sheet (SDBS) should be submitted as of November 1,
>   2021.**
>
> **Upon receipt of the application for reinstatement and CIO, the Department will
> send Elizabeth Grady a letter identifying the additional documents that will be
> required for the Department's review of the request for reinstatement and CIO.**
>
> **In addition to meeting the requirements of 34 C.F.R. § 600.20(g)(3) and (h)(3),
> Elizabeth Grady must also demonstrate to the Department that it qualifies to be
> certified to participate in the Title IV, HEA programs under 34 C.F.R. Part 668,
> Subpart B.  In addition to the definitional prerequisites of institutional eligibility
> (*see* 34 C.F.R. § 668.13(a)(1)), Elizabeth Grady must also meet the standards of
> administrative capability set forth at 34 C.F.R. § 668.16, and the standards of
> financial responsibility set forth at 34 C.F.R. Part 668, Subpart L.**

> **If Elizabeth Grady does not submit its request for reinstatement with all of the required documentation by September 15, 2023, the Department will require Elizabeth Grady to comply with the requirements of 34 C.F.R. 668.26 which apply when an institution's participation in Title IV program ends.  Further correspondence about those requirements will be sent at that time.**

Ex. O, p. 9.

68.     The School responded stating that it "[it] do[es] not agree that the School is not entitled to a hearing based on the Loss of Eligibility Letter and the Department's refusal to reimburse or process further reimbursement claims during the period January 2023 through May 2023, and the School reserves all rights on these issues."  Ex. O, p. 5.  It also requested 30 days to submit the necessary documents to meet the extensive requirements for reinstatement, advising the Department, "As you know, we sent our e-mail to you on June 21, 2023, and did not receive a response until the evening of September 5, 2023, which gives the School only ten days to submit the materials requested below.  The School is working on gathering its materials, but it needs more time."  Id.

69.     On September 15, 2023, the Department granted the 30 day extension.  Id., p. 4.

70.     The School is working diligently to meet the requirements of the Department but requires more time to collect the materials necessary for provisional reinstatement.  On October 19, 2023 it requested another 30 days to submit the necessary materials to the Department, which request was granted by the Department.  Ex. O, pp. 1-2.

71.     The Department's decision to deprive the School of a hearing in accordance with 34 C.F.R. § 668.86(b)(3) & (4) and § 668.89 has jeopardized the financial health of the School and its ability to continue operations.  Without payment from its January 2023 reimbursement request, and the continued processing of reimbursement requests thereafter, it cannot support its students to enroll and attend its School.

72.     Pursuant to 34 C.F.R. § 668.94:

A limitation may include, as appropriate to the Title IV, HEA program in question…

(g) A requirement that an institution obtain surety, in a specified amount, to assure its ability to meet its financial obligations to students who receive Title IV, HEA program funds;
(h) A change in the participation status of the institution from fully certified to participate to provisionally certified to participate under § 668.13(c). ..; or
(j) Other conditions as may be determined by the Secretary to be reasonable and appropriate.

34 C.F.R. § 668.94.

73.     The Department's imposition of the requirement that Ms. DeNicola obtain a cash surety in the amount of "25% of the prior year's Title IV funding based on [her] combined ownership percentage" constitutes a limitation under 34 C.F.R. § 668.94.

74.     The Department's determination that the School has lost eligibility but may be provisionally certified constitutes a change in participation status under 34 C.F.R. § 668.94.

75.     Moreover, the Department's decision to end the School's eligibility and to issue a stop payment order on its receipt of federal funds for its students is in effect a limitation of its participation in Title IV, HEA programs.

76.     The Department has deprived the School of fundamental notice and process to which it is entitled under 34 C.F.R. § 668.86(b)(1).

77.     Pursuant to 34 C.F.R. § 668.86(b)(1), "[a] designated department official begins a limitation or termination proceeding by sending an institution or third-party servicer a notice by certified mail, return receipt requested."  Among other things, such notice:

(ii) Specifies the proposed effective date of the limitation or termination, which is at least 20 days after the date of mailing of the notice of intent; [and] (iii) Informs the institution or servicer that the limitation or termination will not be effective on the date specified in the notice if the designated department official receives from the institution or servicer, as applicable, by that date a request for a hearing or written material indicating why the limitation or termination should not take place."

34 C.F.R.  § 668.86(b)(1)(ii) & (iii).

78.     Pursuant to 34 C.F.R. § 668.86(b)(3):

If the institution or servicer requests a hearing by the time specified in paragraph (b)(1)(iii) of this section, the designated department official transmits the request for hearing and response to the Office of Hearings and Appeals, which sets the date and place. The date is at least 15 days after the designated department official receives the request. *The limitation or termination does not take place until after the requested hearing is held.*

34 C.F.R. § 668.86(b)(3) (emphasis added).

79.     Pursuant to 34 C.F.R. § 600.41(c)(1):

An action to terminate and limit the eligibility of an institution as a whole or as to any of its locations or educational programs is initiated in accordance with 34 CFR 668.86(b) and becomes final 20 days after the Secretary notifies the institution of the proposed action, unless the designated department official receives by that date a request for a hearing or written material that demonstrates that the termination and limitation should not take place.

34 C.F.R. § 600.41(c)(1)

80.     The Department violated 34 C.F.R. § 668.86(b)(1)(ii) & (iii) because the termination letter did not "[s]pecif[y] the proposed effective date of the limitation or termination, which is at least 20 days after the date of mailing of the notice of intent" or notify the School that "the limitation or termination will not be effective on the date specified in the notice if the designated department official receives from the institution or servicer, as applicable, by that date a request for a hearing …"

81.     The Department violated 34 C.F.R. § 668.86(b)(3) and § 600.41(c)(1) because it terminated the School's eligibility prior to any hearing.

82.     The Department has violated 34 C.F.R. § 668.86(b)(3) because it has issued  a stop payment on all reimbursement requests and has rejected the School's reimbursement request for $155,565,40 despite the fact that no hearing has been held.

19

83.     As a result of the Department's failures, the School's students were unable to or encountered problems completing the required exit counseling, prospective students in need of Title IV, HEA program funds cannot commence the School's programs, and current students reliant on student financial assistance cannot continue their studies.

84.     As a result of the Department's actions, the School's enrollment has dropped to precarious levels because it cannot offer its students financial aid.  In the span of just one year, its enrolled students have dropped from over 200 to approximately 30 students.

85.     As a result of the Department's violations, EGFF cannot continue funding the School at previous levels.

86.     The School will suffer irreparable injury if its reimbursement requests are not processed through Title IV, HEA programs prior to a hearing.

## **CLAIMS FOR RELIEF**

### **Count I – DECLARATORY JUDGMENT**

87.     Plaintiffs repeat, re-allege, and incorporate herein, each and every allegation of the Verified Complaint, as though fully set forth herein.

88.     An actual controversy has arisen as to whether the Department has violated 34 C.F.R. § 668.86(b)(3) and § 600.41(c)(1).

89.     Plaintiffs seek a declaration affirming that the Department has violated 34 C.F.R. § 668.86(b) and § 600.41(c)(1) by failing to notify the School of a proposed effective date of termination, which was at least 20 days after the date of mailing of the notice; by failing to inform the School that the termination would not be effective if the designated department official receives from School by that date a request for a hearing or written material indicating why the limitation should not take place; by terminating the School's eligibility for Title IV,

HEA programs prior to any hearing, which was timely requested by the School; and by issuing a

stop payment on all reimbursement requests, refusing to reimburse the School since January

2023 and requiring that the School obtain surety, in a specified amount, to assure its ability to

meet its financial obligations to students who receive Title IV, HEA program funds prior to any

termination notice being provided and/or any hearing being held.

**Count II – VIOLATION OF DUE PROCESS**
**UNDER THE ADMINISTRATIVE PROCEDURE ACT**

90.     Plaintiffs repeat, re-allege, and incorporate herein, each and every allegation of

the Verified Complaint, as though fully set forth herein.

91.     The Administrative Procedure Act ("APA") requires that a court hold unlawful

and set aside agency action, findings, and conclusions found to be in excess of statutory

authority, short of statutory right, or not in accordance with law.  5 U.S.C. § 706(2)(A), (C).

92.     20 U.S.C. § 1094 of the Higher Education Act ("HEA") outlines the

comprehensive enforcement tools and actions the DOE may take with respect to an institution it

believes is in violation of Title IV of the HEA. These specific enforcement actions include

suspension, limitation or termination of the participation in federal financial aid programs, as

well as emergency actions.  All such actions provide for notice and show cause or administrative

appeal.

93.     The Department's rejection of the School's claim for reimbursement, stop

payment order, determination that the School has lost its eligibility, and requirement that the

School obtain surety, in a specified amount, to assure its ability to meet its financial obligations

to students who receive Title IV, HEA program funds constitute limitations under 34 C.F.R.

§ 668.94.

94.     The Department failed to abide by the established regulatory procedures outlined

21

in 34 C.F.R. § 668.86 to provide notice and a hearing to the School.

95.     The Department's termination notice violated 34 C.F.R. § 668.86(b)(ii) & (iii).

96.     The Department violated 34 C.F.R. § 668.86(b)(3) and § 600.41(c)(1) because it terminated the School's eligibility prior to and without affording the School its requested opportunity to be heard.

97.     The Department has violated 34 C.F.R. § 668.86(b)(3) because it has issued a stop payment on all reimbursement requests and has refused to reimburse over $580,869.40 despite the fact that no hearing has been held.

98.     The School made proper requests for reimbursements.  The Department delayed processing the School's requests for months and then rejected its claims based upon its termination decision.

99.     The Department's actions in terminating the School's eligibility, refusing to reimburse its requests for funding, and requiring that the School obtain surety prior to any hearing violate its procedural due process rights.  5 U.S.C. §§ 701 et seq.

100.    Funds earned through Title IV programs are vital to the operation of the School because many of its students are from low-income backgrounds and rely on Title IV assistance to pay tuition.  Without access to Title IV programs, these students will not be able to continue to attend the School and new students cannot be enrolled.  Likewise, the School will experience substantial loss of revenues needed for its continued operation.

101.    Unless the Secretary is restrained and enjoined from continuing to violate federal regulations and Plaintiffs' due process rights, the School's finances will continue to deteriorate. This will work serious damage upon the School's operations, reputation and goodwill, for which no amount of monetary damages is adequate compensation.

102.     As a result of the Department's actions in violation of federal regulations, the School is threatened with imminent and irreparable harm unless injunctive relief is granted. The School has no adequate remedy at law as the Department has not scheduled any hearing.

### Count III – MANDAMUS

103.     Plaintiffs repeat, re-allege, and incorporate herein, each and every allegation of the Verified Complaint, as though fully set forth herein.

104.     Under Title IV of the Higher Education Act and implementing regulations, once an institution of higher education has requested reimbursement for Federal Pell Grants and Direct Loans under the HCM2 program, the Department "shall" pay the request if the student is eligible, if the amount is proper, and if the institution submits the additional paperwork the Department requests. 20 U.S.C.A. § 1070a.

105.     The School properly requested that the Department reimburse it for funds it disbursed to eligible students.

106.     The Department intentionally delayed processing the School's request for reimbursement on the basis of its review of the School's Change in Ownership.

107.     The Department failed to advise the School that it was at risk of losing it eligibility, causing the School to advance approximately $606,842 to eligible students, which has not been reimbursed.

108.     On May 12, 2023, the Department terminated the School's eligibility for Title IV, HEA programs as a result of its CIO and informed it that any Title IV, HEA funds received by the School since November 1, 2021 constitute institutional liabilities.  On May 16, 2023, the Department issued a stop payment order, prohibiting the School from accessing or drawing down on any HEA funds.

109.    On May 30, 2023 the School requested a hearing pursuant to 34 C.F.R.

§ 668.86(b).  Pursuant to 34 C.F.R §§ 668.86(b)(3) and 600.41(c)(1), the School's eligibility and

funding may not be terminated during the pendency of the hearing.

110.    On September 5, 2023, the Department informed the School that it was not

entitled to a hearing.

111.    The Department has a mandatory, non-discretionary duty to provide notice and

hearing to the School pursuant to 34 C.F.R. § 668.86 due to the limitations it has imposed upon

the School.

112.    If the Court finds that the School is not entitled to declaratory relief or the due

process it contends it is entitled, then the School is left with no remedy under law.  Absent an

order compelling the Department to reinstate its eligibility and properly process the School's

request for reimbursement, the School will have no means of recovering the $1.3 million in

funds it is currently owed.

113.    Accordingly, the School is entitled to a writ of mandamus requiring the

Department to reinstate the School's eligibility and timely process the School's request for

reimbursement of institutional funds disbursed to students from October through May of 2023.

## PRAYER FOR RELIEF

WHEREFORE, Elizabeth Grady School of Esthetics and Massage Therapy prays for the

following relief:

1.    That this Court enjoin the Secretary, his agents, and his employees, from

terminating the School's participation in the student financial assistance programs authorized

pursuant to Title IV of the Higher Education Act of 1965, as amended, 20 U.S.C. §§ 1070 et seq.

("Title IV, HEA programs"), and, further, that this Court issue a preliminary injunction ordering

the Secretary, his agents, and his employees, to immediately reinstate the School's Title IV participation;

2.      That this Court order the Secretary, his agents, and his employees, to process and to pay the School's January 8, 2023 reimbursement request totaling $155,565.40, the $425,304 pending reimbursement requests, and approximately $700,000 awaiting submission to the Department;

3.      That this Court order the Secretary, his agents, and his employees, to continue the School's status of eligibility while the Court reviews this matter and until a final determination has been made by the Department after affording the School a hearing under 34 C.F.R § 668.86(b)(3) & (4)  and 34 C.F.R. § 668.89.

4.      That this Court declare that the Secretary's termination decision and refusal to reimburse the School pending a hearing and final determination violated Plaintiffs' due process rights; and

5.      Such other relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the School hereby requests a trial by jury on all Counts in this Verified Complaint which are so triable.

**ELIZABETH GRADY SCHOOL OF
ESTHETICS AND MASSAGE THERAPY,
ELIZABETH GRADY FACE FIRST, INC.,
AND EGFF HOLDING CORP.**

Respectfully submitted,

By its attorneys,

*/s/ Sammy S. Nabulsi*
Sammy S. Nabulsi (BBO #691503)
Meredith W. Doty (BBO #652220)
ROSE LAW PARTNERS LLP
One Beacon Street, 23rd Floor
Boston, MA  02108
(617) 536-0040
Fax: (617) 536-4400
ssn@rose-law.net
mwd@rose-law.net

Dated: October 20, 2023

## <u>VERIFICATION</u>

I, Kathleen DeNicola, do hereby verify that the foregoing factual statements are true and accurate.

Signed under the penalties of perjury this 20th day of October, 2023.

Kathleen DeNicola
Elizabeth Grady School of Esthetics and
Massage Therapy