# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ELIZABETH GRADY SCHOOL OF ESTHETICS AND MASSAGE THERAPY, ELIZABETH GRADY FACE FIRST, INC., AND EGFF HOLDING CORP.<br><br>Plaintiff,<br><br>v.<br><br>DR. MIGUEL CARDONA, in his Official Capacity as SECRETARY of the UNITED STATES DEPARTMENT OF EDUCATION<br><br>Defendant. | Civil Action No.: 1:23-CV-12461<br><br>Leave granted on 11/20/23 |

**PLAINTIFFS ELIZABETH GRADY SCHOOL OF ESTHETICS
AND MASSAGE THERAPY, ELIZABETH GRADY FACE FIRST, INC.,
AND EGFF HOLDING CORP.'S REPLY MEMORANDUM IN
<u>SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION</u>**

In response to the Plaintiffs Elizabeth Grady School of Esthetics and Massage Therapy, Elizabeth Grady Face First, Inc., and EGFF Holding Corp.'s (collectively, the "School") motion for a preliminary injunction, the Defendant Secretary Miguel Cardona asserts legal defenses, addressed further below, but misses the point entirely. It is the Secretary and his Department of Education's (the "Department") delay in communication and failure to notify the School that has put the School in the situation where it now finds itself, and it is the Department's lack of engagement that continues to frustrate the School's reinstatement, which the Secretary now argues must be exhausted.

The Department allegedly learned of the School's change in ownership in October of 2022. Rather than advise the School in October 2022 that it had lost eligibility to participate in Title IV HEA programs, the Department continued to approve federal financial assistance for students attending the School. For the next eight months, the School, as it was required to do, continued to advance funds to eligible students, reasonably relying on its status as an eligible institution. It was not until May 12, 2023 that the Department informed the School that it had lost eligibility. If the School had known that it was in fact *ineligible* to provide funding to those *eligible* students—the majority of whom are from low-income families and cannot afford to attend the School without government assistance—the School would not have advanced funds to eligible students or admitted those students to the School's programs. This good-faith advance of funds has left the School unexpectedly out approximately $1.3 million—a reimbursement request totaling $155,565.40, $425,304 in pending reimbursement requests, and another $700,000 outstanding from the Department—and at the brink of closure because of a dispute over paperwork. Pltf. Mtn. for Prelim. Injunction at pp. 2. The Secretary does not contend that the School is ineligible for reasons other than the alleged failure to notify the Department of the School's change in ownership, nor does the Secretary contend that the School is likely to be ineligible following the Department's desired reinstatement process. The Department does not take issue with the School's credentialing or merits. By refusing to reimburse the School, the Department has only, in fact, penalized the School for doing exactly what it was required to do.

The Secretary credits his Department for seemingly providing a path for the School's reinstatement with full awareness that the path is not a viable option for the School. As has been explained to the Department, the School is unable to provide all (but has provided some) of the Department's requested documentation due to the financial situation imposed by the Department

and the Department's delay and lack of communication. In reality, the Department offers only an additional vehicle for it to delay and dodge the School's inquiries. The School is and will continue to suffer irreparable harm without a preliminary injunction.

## I. PERTINENT FACTS

### A. Timeline

The Department's Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction ("Opp. Br.") mischaracterizes the timeline of events. Opp. Br. at 23. The undisputed timeline is as follows:

- **November 1, 2021:** Ms. DeNicola acquires the School and, subsequently, notifies the Division of Professional Licensure of the Commonwealth of Massachusetts of the change in ownership. Compl. at ¶¶ 2, 21.

- **September 30, 2022:** The Department places the School on Heightened Cash Monitoring 2 ("HCM2"). Compl. at ¶ 30. Under Heightened Cash Monitoring 2, the School makes disbursements to students from its own institutional funds, and then must submit a Reimbursement Payment Request for those funds to the Department. Compl. at ¶ 30.

- **October 2022:** The Department inquires about the change in ownership, and the School provides the information the Department requests. The Department does not notify the School that it may no longer be eligible to receive Title IV funds, and the Department does not instruct the School to cease admitting students awarded financial aid. Compl. at ¶ 4.

- **January 8, 2023:** The School submits a $155,565.40 claim for reimbursement to the Department. Compl. at ¶ 31. This request is still pending. Compl. at ¶ 32.

- **January 8, 2023-May 11, 2023:** The School continues to fund eligible students out its own funds, reasonably anticipating—based on the Department's assurances—that these disbursements will be reimbursed by the Department. Compl. at ¶ 33. During this time, the School contacted the Department more than a dozen times to inquire about the status of the January 2023 reimbursement request. Compl. at ¶¶ 35-49.

- **May 12-16, 2023:** The Department sends the School a letter reading, "Elizabeth Grady lost eligibility to participate in the student financial assistance programs authorized pursuant to Title IV . . . on November 1, 2021." Opp. Br. at 9. Several days later the School is notified that it "has been placed on STOP PAYMENT due noncompliance [sic] with grant award funds. As a result, your institution is prohibited from accessing or

drawing down any remaining Higher Education Emergency Relief Funds (HEERF) funds." Compl. at ¶¶ 7, 52.

- **May 30, 2023:** The School requests a hearing pursuant to 34 C.F.R. § 668.86(b) and requests a meeting with the Department. Compl. at ¶ 8.

- **June 21, 2023:** The School's counsel e-mails Department a list of written questions, per the Department's instructions, including an inquiry about when the School could expect a hearing and what information the Department needs to process the School's pending reimbursement requests. Compl. at ¶ 58. The School follows up with the Department multiple times between July 5, 2023, and August 23, 2023. Compl. at ¶¶ 58-64

- **September 5, 2023:** The Department responds to the School's June 21, 2023 e-mail and follow-up e-mails and denies the School's hearing request, saying that the School is not entitled to a hearing under the regulations. After the School waited for three months for a response, the Department provides the School *ten days*, until September 15, 2023, to submit its reinstatement application. Compl. at ¶ 9.

- **September 14, 2023:** Given that its hearing request was denied, the School requests an extension to submit documentation required to pursue provisional reinstatement. Compl. at ¶ 68.

- **October 17, 2023:** The School files for a preliminary injunction.

- **October 19, 2023:** The School requests a 30-day extension to submit for reinstatement. Compl., Ex. O.

- **November 3, 2023:** At the Department's request, the School agrees to a call with the Department with an aim towards narrowing the dispute between the parties. After requesting information from the School as to what documentation it can provide in support of reinstatement, the Department's counsel advises the School that it will get back to the School the next week.

- **November 13, 2023:** The School contacts the Secretary's counsel to inquire about the appropriate recipient of documents the School plans to submit in support of reinstatement.

- **November 14, 2023:** Receiving no response from the Secretary's counsel, the School sends requested documentation to the Department.

- **November 17, 2023 at 3:32 p.m.:** The Secretary opposes the preliminary injunction.

- **November 17, 2023 at 7:09 p.m.:** The Department informs the School that the documents submitted do not meet the Department's requirements and requiring the submission of documents that the Department is fully aware the School cannot submit. Ex. 1.

### B. Lack of Communication From The Department

During the November 3, 2023 status conference, the School understood from the Court that the parties should work towards a potential resolution to this matter prior to the November 20 hearing. To that end, the School engaged in good faith in a telephone conference with Assistant United States Attorney ("AUSA") Rayford Farquhar and representatives of the Department, Donna Mangold, Deputy Assistant General Counsel for the Department, and Jake Lallo, General Counsel for the Department, on November 3, 2023. AUSA Farquhar inquired what reinstatement requirements the School was able to meet, and the School was forthright concerning its inability to provide all of the required reinstatement documents, due to the Department's actions (i.e., the School's financial situation caused by a lack of reimbursement) and failures to act (i.e., the Department's lengthy delays in notifying the School of its ineligibility, in denying a hearing, and in responding to the School's questions), but that it still wished to pursue reinstatement and attempt to provide all required documents. The School's counsel explained that the School would have the ability to obtain and provide the Department with the remaining information and documentation if the School's outstanding reimbursement requests were processed. AUSA Farquhar thanked counsel for sharing this information and said, more than once, that the Department or its counsel would get back to the School the following week regarding whether the Department could reimburse the School for its outstanding reimbursements to allow the School to obtain all of the documents required by the Department for reinstatement. The School's counsel never received a call from the Department or its counsel the following week.

Ten days following its phone call with the Department, on Monday, November 13, 2023, the School's counsel emailed the Department's counsel asking to whom it should submit the

School's reinstatement documents.  Ex. 1.  The School received no response.  On November 14, 2023, given that the Department had not responded and the pending deadline for the reinstatement application, the School's counsel sent the documents to Ms. Vanessa Dillard, Division Chief of New York/Boston School Participation Division.  That email stated that it looked forward to hearing from the Department "on a proposed resolution to process the School's outstanding reimbursement requests so that the School may obtain and provide to the Department the remaining information and documentation requested."  Ex. 1.

On Thursday, November 16, 2023, AUSA Michael Fitzgerald contacted the School's counsel, asking for an assent to a motion to exceed the page limit for the Department's opposition brief.  The School's counsel inquired as to whether the Department planned to get back to the School regarding the parties' November 3 call, as the Department had indicated it would do so the prior week.  On a subsequent call, the School's counsel learned that the Department would not release any reimbursement funds which would allow the School to fulfill all of the reinstatement requirements.  AUSA Fitzgerald also advised the School's counsel that the Department would move forward with its opposition, and would respond to its November 14, 2023 email, but that the Department did not plan to communicate with the School regarding the reinstatement requirements prior to the November 20, 2023 hearing. The School's counsel advised AUSA Fitzgerald that regardless of the litigation, the School required a response to its emails regarding its reinstatement application and its questions concerning the documents required.

On November 17, 2023 at 9:04 am, the School's counsel emailed Ms. Dillard asking her to advise the School as to what other documents the Department requires under 34 C.F.R. § 600.20(g)(3) and to whom should the School submit its reinstatement application.  Ex. 1.  At

6

7:10 p.m., the School's counsel received an e-mail from Ms. Dillard stating that the reimbursement paperwork submitted by the School was not sufficient or compliant with the Department's regulations. Ex. 1. Ms. Dillard's email went on to state that the Department requires submission of documents which the School had already stated (on the November 3, 2023 call) that it could not submit due to its financial condition imposed by Department. The School had earnestly hoped that, given the November 3, 2023 conversation, the parties would be able to forge a path to resolution in advance of November 20, 2023 hearing. The Department, however, denied the School's request and has been unwilling to engage further or consider any flexibility in its requirements.

**II. ARGUMENT**

    A. <u>The Court Has Jurisdiction Because The Higher Education Act's Anti-Injunction Clause Does Not Apply</u>

The Higher Education Act of 1965 ("HEA") does not prevent the Court from exercising jurisdiction over the School's motion for preliminary injunction, which alleges a violation under the Administrative Procedures Act ("APA"). Compl. at ¶¶ 90-102. The HEA's language does not prevent a party from seeking declaratory relief under the APA. *Vara v. DeVos*, No. CV 19-12175-LTS, 2020 WL 3489679, at *21 n.18 (D. Mass. June 25, 2020) (explaining "'no-injunction language' like the HEA's . . . does not provide blanket immunity from every type of injunction"). Specifically, the HEA's language "should not be interpreted as a bar to judicial review of agency actions that exceed agency authority." *Id; see also Adams v. Duncan*, 179 F. Supp. 3d 632, 640 (S.D.W. Va. 2016) (collecting cases). The prohibition suggested by the Department "would [ ] directly conflict with First Circuit precedent regarding the scope of anti-injunction provisions." *Vara*, 2020 WL 3489679, at *21 n.18 (citing *Ulstein Mar., Ltd. v. United States*, 833 F.2d 1052, 1057 (1st Cir. 1987)).

The School does not argue that the Department erred in the "exercise and application" of authority, as the Department suggests. Opp. Br. at 12. The School's argument under the APA is that the Department's acts (specifically, denying the School a required hearing after the Department placed a limitation on its participation in Title IV HEA programs) was unlawful because it was in excess of statutory authority, short of statutory right, or not in accordance with law. 5 U.S.C. §§ 706(2)(A) and (C). *See Boston Redev. Auth. v. National Park Serv.*, 838 F.3d 42, 50 (1st Cir. 2016). Therefore, the anti-injunction language of the HEA does not apply, and the Court has jurisdiction over the School's request.

    B. <u>The School's Likelihood of Success</u>

        1. *Declaratory Judgment And "Beneficial Interest"*

Throughout its brief, the Department repeatedly implies that the School has been less than transparent with its ownership and financial status. This is not so. Specifically, the Department makes much of its position that the School failed to properly understand the meaning of a "beneficial interest" for the purposes of C.F.R. § 600.31(e), though the Department concedes that the regulations do not, in fact, define a "beneficial interest." Opp. Br. at 17, 18 ("although the regulation itself did not define what qualifies a 'beneficial interest' as an 'ownership interest' in this context . . . "). Even assuming the Department's interpretation is correct, which the School does not concede, the Department frames this purported misunderstanding, which amounts to, at most, an inadvertent paperwork error, as a calculated act, which is simply not the case.

As the regulation does not define a "beneficial interest" the Department resorts to case law from California and Delaware in attempt to show it does not mean what the School believed it to mean. Notably, in January 2022, the Department proposed changes to its own regulation

8

concerning Change in Ownership, 34 C.F.R. § 600.31, "to ensure a clearer, more streamlined process for consideration of changes in ownership."[1] Those changes became effective on July 1, 2023 and included clarification to a number of sections.[2] Ms. DeNicola did not have the benefit of these clarifying changes when she acquired the School in what she believed was an exempt transaction.

The School was and is not trying to obfuscate information regarding the change in ownership. As evidence of the School's transparency, Ms. DeNicola notified the Division of Professional Licensure of the Commonwealth of Massachusetts of the change in ownership. Compl. at ¶ 21. Furthermore, when asked by the Department for information concerning the change in ownership, Ms. DeNicola provided it. The School has repeatedly and consistently asked the Department for an avenue for redress for what the Department alleges is a technical mistake and now, the School is pursuing both available avenues for reinstatement—a preliminary

---

[1] *See* U.S. Dep't of Ed., *Issue Paper 5: Changes of Ownership and Change in Control* (Jan. 2022), https://www2.ed.gov/policy/highered/reg/hearulemaking/2021/5changesinownership.pdf.
[2] 34 C.F.R. § 600.31 changed from "[a] change in ownership and control reported" to "[a] change in ownership and control timely reported," and (e)(2) was changed from:

> Upon the retirement or death of the owner, to a person with an ownership interest in the institution who has been involved in management of the institution for at least two years preceding the transfer and who has established and retained the ownership interest for at least two years prior to the transfer.

to:

> A transfer to an individual owner with a direct or indirect ownership interest in the institution who has been involved in the management of the institution for at least two years preceding the transfer and who has established and retained the ownership interest for at least two years prior to the transfer, either upon the death of another owner or by transfer from another individual owner who has been involved in the management of the institution for at least two years preceding the transfer and who has established and retained the ownership interest for at least two years prior to the transfer, upon the resignation of that owner from the management of the institution.

*Compare* 34 C.F.R. § 600.31 (2020) *with* 34 C.F.R. § 600.31 (2023).

9

injunction and provisional reinstatement. It is unclear what more the School must do to satisfy the Department.

### 2. Due Process

The School's due process claim is based on the Department's failure to abide by the procedures of the APA. Opp. Br. at 19. To be successful on this claim, the School need only show that it was not afforded adequate notice and an opportunity to be heard "at a meaningful time and in a meaningful manner." *Boston Redev. Auth.*, 838 F.3d at 50. The Department has, both literally and by the definition of its own regulation, placed a limitation on the School. For example, as the Department acknowledges, 34 C.F.R. § 668.94 provides that a "limitation" refers to the imposition of a "condition." Opp. Br. at 20. 34 C.F.R. § 668.94(g) defines a "limitation" as, inter alia, "[a] requirement that an institution obtain surety, in a specified amount." This is precisely one of the limitations applied to the School. Ms. Dillard's September 5, 2023, e-mail states that "a new owner letter of credit ("LOC") or cash surety will be required for any new shareholder." Ex. O, pp. 9, of Pltf. Mtn. for Prelim. Injunction. This limitation entitles the School to a hearing under 34 C.F.R. § 668.86(b), without which its process rights under the APA are violated.

### C. The School Has Established Irreparable Harm

The School has demonstrated that it will suffer irreparable harm in the event that a preliminary injunction is not granted because the School has and will continue to suffer enrollment declines and the School will be unable to reestablish eligibility.

The Department repeatedly states that the School has delayed its application for reinstatement, arguing that the delay evidences a lack of irreparable harm to the School. Opp. Br. at 24. This is not so. The Department informed the School that it had lost eligibility on May

12, 2023, and the School requested a hearing eighteen days later. Then, for three months, the School repeatedly requested information from the Department while it waited for a response to its hearing request. Compl. at ¶¶ 49-64. It was not until September 5, 2023, that the Department advised the School that it would not receive a hearing. Since then, the School has attempted to collect the required documents for reinstatement in earnest, but the School is unable to collect all of the required documents without the Department processing the School's January 2023 and pending reimbursement requests.

In addition, the School's motion explains how it will be subject to more than financial loss, citing a number of harms that constitute "a substantial injury that is not accurately measurable or adequately compensable by money damages." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 19 (1st Cir. 1996). This includes the School's credible statements that the School has and will continue to suffer a loss of enrollment and suffer financially. *See Climate Control Inst. of Oklahoma, Inc. v. Alexander*, No. 93-C-198-E, 1993 WL 840279, at *4 (N.D. Okla. Aug. 16, 1993) ("if [the loss of lender access is] not enjoined, [it] will cause Plaintiffs to either downsize or cease business"); *Ross Univ. Sch. of Med., Sch. of Veterinary Med. (St. Kitts) Ltd. v. Cavazos*, 716 F. Supp. 638, 644 (D.D.C. 1989) (finding credible school's statements of financial harm absent injunction as large number of students paid tuition with Title IV loans). This also includes a loss of reputation and goodwill, which is non-compensable by money damages. *Ross-Simons of Warwick, Inc.*, 102 F.3d at 19.

The School also notes the irreparable harm third parties will suffer, including students (who have been unable to continue their education without financial support) and teachers and staff (whose employment could be impacted). *See Kane v. De Blasio*, 19 F.4th 152, 169 (2nd Cir. 2021) (holding the threat of imminent termination was irreparable harm sufficient to support

11

preliminary injunction); *Welcher v. Sobol*, 222 A.D.2d 1001, 1003 (1995) (holding teacher's termination without back pay sufficient showing of irreparable harm). *Cf. Reach Acad. for Boys & Girls, Inc. v. Delaware Dep't of Educ.*, 46 F. Supp. 3d 455, 474 (D. Del. 2014) (finding irreparable harm where DOE's threatened non-renewal of school's charter would "obviously" "caus[e] a precipitous drop in enrollment and lack of financial viability—even if Plaintiffs prevail at trial").

### III. REQUEST FOR LEAVE

The School filed its Motion for Preliminary Injunction on October 27, 2023. The Department filed its 25-page opposition three weeks later, on Friday, November 17, 2023, at approximately 3:30 p.m. The hearing on the School's motion for preliminary injunction is scheduled for today, Monday, November 20, 2023 at 1 p.m.

Given the very short period of time the School has been afforded to prepare its reply, the School requests leave to submit a supplemental memorandum addressing any issues it did not have the opportunity to brief before the Monday, 1 p.m. hearing, and reserves its rights on those issues.

### IV. CONCLUSION

For the foregoing reasons, and the reasons stated in the School's Memorandum in Support of Motion for Preliminary Injunction, the Court should grant the School's Motion for Preliminary Injunction.

**ELIZABETH GRADY SCHOOL OF ESTHETICS AND MASSAGE THERAPY, ELIZABETH GRADY FACE FIRST, INC., AND EGFF HOLDING CORP.**

Respectfully submitted,

By its attorneys,

<u>*/s/ Sammy S. Nabulsi*</u>
Sammy S. Nabulsi (BBO #691503)
Meredith W. Doty (BBO #652220)
ROSE LAW PARTNERS LLP
One Beacon Street, 23rd Floor
Boston, MA 02108
(617) 536-0040
Fax: (617) 536-4400
ssn@rose-law.net
mwd@rose-law.net

Dated: November 20, 2023

## <u>CERTIFICATE OF SERVICE</u>

I, Sammy S. Nabulsi, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent via mail to those indicated as non-registered participants.

<u>*/s/ Sammy S. Nabulsi*</u>
Sammy S. Nabulsi

Date: November 20, 2023