UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ELIZABETH GRADY SCHOOL OF ESTHETICS AND MASSAGE THERAPY, ELIZABETH GRADY FACE FIRST, INC., and EGFF HOLDING CORP., | * * * * * * | |
| Plaintiffs, | * * | Civil Action No. 23-cv-12461-ADB |
| v. | * * | |
| DR. MIGUEL CARDONA, in his Official Capacity as SECRETARY of the UNITED STATES DEPARTMENT OF EDUCATION, | * * * * | |
| Defendant. | * | |

## MEMORANDUM AND ORDER

BURROUGHS, D.J.

Before the Court is Plaintiffs' Elizabeth Grady School of Esthetics and Massage Therapy, Elizabeth Grady Face First, Inc., and EGFF Holding Corp. (collectively, "Plaintiffs") motion for a preliminary injunction requesting that Defendant Dr. Miguel Cardona, his agents, and his employees (collectively, "Defendant") (1) be enjoined from terminating and/or limiting Plaintiffs' participation in the student financial assistance programs authorized pursuant to Title IV of the Higher Education Act of 1965 (20 U.S.C. §§ 1070 et seq. ("HEA")), and (2) be ordered to reinstate Plaintiffs' Title IV participation, to process and pay certain reimbursements, and to continue the Plaintiffs' status of eligibility under the HEA until a final determination has been made by Defendant after a hearing. [ECF No. 4 at 1–2]. For the reasons set forth below, the motion, [ECF No. 4], is DENIED.

### I. BACKGROUND

The Court summarizes facts only as relevant to the pending motion.

Elizabeth Grady School of Esthetics and Massage Therapy (the "School") provides programming for students to get licensed in esthetics and massage therapy. [ECF No. 1 ¶¶ 1, 16 ("Complaint" or "Compl.")].[1] "At least 85% of the School's students rely on" financial aid programs provided under Title IV, which are administered by the Department of Education (the "Department" or "DOE"), [id.], which is, in turn, run by Defendant Dr. Miguel Cardona, [id. ¶ 12].

From 2016 through 2021, Kathleen DeNicola served as the CFO of Plaintiffs. [Compl. ¶ 18]. On September 8, 2021, she entered into an Agreement for a Stock Purchase with Plaintiffs' prior owner, John Walsh. [Id. ¶ 19]. Pursuant to that agreement, DeNicola acquired Plaintiffs on November 1, 2021, [id. ¶¶ 2, 19], and Walsh retired, [id. ¶ 20].

As relevant here, under the applicable regulations, discussed in more detail below, a school receiving Title IV funding "ceases to qualify as an eligible institution upon [a] change in ownership and control," and must notify the Department of the change in ownership and reestablish its eligibility. See, e.g., 34 C.F.R. § 600.31(a)(1) (2021). An institution is exempt from this requirement, however, in the following circumstance:

> Excluded transactions. A change in ownership and control reported under § 600.21 and otherwise subject to this section does not include a transfer of ownership and control of all or part of an owner's equity or partnership interest in an institution, the institution's parent corporation, or other legal entity that has signed the institution's Program Participation Agreement—. . . (2) Upon the retirement or death of the owner, to a person with an ownership interest in the institution who has been involved in management of the institution for at least two years preceding the transfer and who has established and retained the ownership interest for at least two years prior to the transfer.

34 C.F.R. § 600.31(e)(2).

---

[1] The School is a division of Plaintiff Elizabeth Grady Face First, Inc., which is a subsidiary of Plaintiff EGFF Holding Corp. [Compl. ¶ 11].

Here, months after the change in ownership, in May 2022, the School notified the Division of Professional Licensure of the Commonwealth of Massachusetts of the change in ownership, but did not formally notify the Department. [Compl. ¶¶ 2, 21]. Plaintiffs allege that they did not notify the Department because they believed Ms. DeNicola's purchase was an exempt transaction under 34 C.F.R. § 600.31(e). [Id. ¶ 24].[2]

In September 2022, the Department became aware of the sale when it received a report from National Accrediting Commission of Career Arts & Sciences, Inc. ("NACCAS"). [Compl. ¶ 22]. Also in September or October of 2022, the School submitted an annual compliance audit and financial statements that "included information regarding the sale of the School." [Id. ¶ 25]; see also [ECF No. 1-9 at 2]. The auditor reviewing those submissions concluded that a change in ownership had occurred, and that the School had not notified the Department. [ECF No. 1-9 at 2]. As a result, the school was placed on "HCM2" by the Department, which requires the school to pay financial aid requests from its own funds and then request reimbursement from the Department, as opposed to the Department providing funds in advance. See [Compl. ¶ 26].

---

[2] Specifically, Plaintiffs aver that

> During negotiations that began in 2018, more than two years prior to the sale, it was understood between Mr. Walsh and Ms. DeNicola that she would receive a significant discount on the purchase price of EGFF Holding Co., having been a current employee holding a management position at the School. This understanding drove Ms. DeNicola to purchase EGFF Holding Co., and Ms. DeNicola benefited from this understanding when she ultimately purchased EGFF Holding Co. in 2021 at a significant discount to its appraised value. The School and Ms. DeNicola believed that Ms. DeNicola's option to purchase EGFF Holding Co. at a discount not available to other potential bidders constituted a beneficial interest.

[Compl. ¶ 23].

Between October 2022 and February 2023, the Department requested more information from the School regarding the change of ownership, [Compl. ¶¶ 28–29], apparently for the purpose of assessing the auditor's finding regarding the School's eligibility for Title IV programming, [id. ¶ 44 (April 7, 2023 email from the Department explaining that the "Change in Ownership Finding" was "being reviewed by an eligibility analyst who has been in contact with [the School] (to my knowledge) and that finding is being reviewed through that process.")].

Also during that time, the School continued to enroll students. [Compl. ¶¶ 31–33]. In January 2023, it submitted a claim to the Department for reimbursement in the amount of $155,565.40, which the Department did not provide. [Id. ¶ 31]. Overall, after the audit finding, the School dispersed and argues that it is entitled to reimbursement of $1.3 million. [Id. ¶¶ 32–33].

Between February and March 2023, DeNicola corresponded with the Department several times, requesting updates and reimbursement. [Compl. ¶¶ 35–48]. At least as early as March 28, 2023, the Department told DeNicola that issues related to the compliance audit and its finding of a change of ownership were under review. [Id. ¶ 41].

On May 12, 2023, the School received email correspondence from the Department attaching a letter explaining that the School had "lost eligibility to participate in" Title IV programming "because the change in ownership was not reported to the Department at the time it occurred." [Compl. ¶ 49 (citing ECF No. 1-9)]. "The termination letter also stated that 'if Elizabeth Grady has received Title IV, HEA funds since November 1, 2021, . . . those funds will constitute institutional liabilities.'" [Id. ¶ 50 (citing ECF No. 1-9)].

The letter further explained that, as part of the October 2022 review in response to the School's September 2022 annual compliance audit and financial statements,

4

the auditor identified a change in ownership and noted that the "institution did not notify the Department of Education of the change in ownership and with proof that its accreditation is continued under the new ownership, along with a photocopy of its state authorization under the new ownership." The auditor recommended that the institution "discuss this finding with the Department of Education to take steps to resolve the issue as soon as possible." However, Elizabeth Grady disagreed with the audit finding. According to the institution's Corrective Action Plan, signed by [the School] and dated October 14, 2022, [the School] stated that the institution "does not agree with [the audit finding]. This was an exempt transaction and per guidelines is not a reportable transaction."

[ECF No. 1-9 at 2–3].[3] In the letter, the Department further explained that, after review, it had "determined that a change in ownership resulting in a change of control occurred as of November 1, 2021." [Id. at 3]. Moreover, because the School neither "file[d] a materially complete application for the [change in ownership] within the time frame" required by the

---

[3] The letter also explains that,

> [a]ccording to the auditor, you claimed the transaction was exempt from the Department's change in ownership regulations because you had at least a 10% stake in EGFF-HC, Elizabeth Grady's Level 2 owner. Although the auditor requested documentation to support the claim that you were a 10% stakeholder for at least 24 months prior to the November 1, 2021 transaction, you failed to provide the documentation. . . . On November 7, 2022, the Department sent an email to you to obtain additional information on the auditor's finding about the change in ownership. The Department also requested copies of all share certificates of EGFF, the stock register for EGFF, all share certificates of EGFF-HC, the stock register for EGFF-HC, and all documents reflecting the transfer of any shares in any of these entities from Mr. Walsh to you. In addition, the Department requested details on the current involvement of Mr. Walsh at the institution. The Department sent a follow-up email to you on November 14, 2022, after not receiving a response from you. On November 16, 2022, you responded and acknowledged that "*during the latest reporting period*, the stockholder of Elizabeth Grady Face First Holding Corporation changed from John P. Walsh . . . to me." (Emphasis added). You also stated that you are the current president of EGFF, which as noted by the Department, is the Level 1 owner of Elizabeth Grady. In addition, you stated that EGFF-HC has been the corporate parent of EGFF and remains as such. On January 15, 2023, the Department requested additional documents to include the front and back of all share certificates for EGFF and EGFF-HC, which the institution submitted on January 30, 2023.

[ECF No. 1-9 at 3].

relevant regulations nor "submit[ted] the required documentation," the Department concluded that "Elizabeth Grady lost eligibility to participate in the Title IV, HEA programs on November 1, 2021."  [Id. at 5].

Since this finding, the School has been unable to meet the Department's requirements for reinstatement, including that it provide a cash surety.  [Compl. ¶ 73]; see also [ECF No. 19 at 2–3].  In addition, the School has requested a hearing regarding its eligibility, which the Department has denied.  [Compl. ¶¶ 65–68].  Because the School has not been reimbursed and cannot receive additional Title IV funding, it alleges that students have been

> unable to or encountered problems completing the required exit counseling, prospective students in need of Title IV, HEA program funds cannot commence the School's programs, and current students reliant on student financial assistance cannot continue their studies.

[Id. ¶ 83].  In addition,

> the School's enrollment has dropped to precarious levels because it cannot offer its students financial aid.  In the span of just one year, its enrolled students have dropped from over 200 to approximately 30 students . . . [and] EGFF cannot continue funding the School at previous levels.

[Id. ¶¶ 84–85].  Accordingly, the School filed the instant request for a preliminary injunction.

## II.     DISCUSSION

### A.     Jurisdiction

As an initial matter, the parties dispute whether the Court has jurisdiction to provide the injunctive relief sought.  Defendant argues that the HEA precludes an injunction.  [ECF No. 15 at 11 (citing 20 U.S.C. § 1082(a)(2) ("[i]n the performance of, and with respect to, the functions, powers, and duties, vested in him by this part, the Secretary may . . . sue and be sued in any court of record of a State having general jurisdiction or in any district court of the United States, . . . [b]ut no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Secretary or property under the Secretary's control . . . ."))].  In response,

6

Plaintiffs aver that they allege a violation under the Administrative Procedures Act ("APA"), not the HEA, and that the HEA does not prevent a party from seeking declaratory relief under the APA. [ECF No. 19 at 7]. Specifically, Plaintiffs argue that the HEA anti-injunction language does not apply because they do "not argue that the Department erred in the 'exercise and application' of authority," but rather that Defendant's acts, "specifically, denying the School a required hearing after the Department placed a limitation on its participation in Title IV HEA programs[,] was unlawful because it was in excess of statutory authority, short of statutory right, or not in accordance with the law." [ECF No. 19 at 8 (citing 5 U.S.C. §§ 706(2)(A), (C); Boston Redev. Auth. v. Nat'l Park Serv., 838 F.3d 42, 50 (1st Cir. 2016))].

> As relevant here, the APA provides that
>
> A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party. The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States: *Provided*, [t]hat any mandatory or injunctive decree shall specify the Federal officer or officers (by name or by title), and their successors in office, personally responsible for compliance. Nothing herein (1) affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground; or (2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.

5 U.S.C. § 702; see also 5 U.S.C. § 703 ("The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction").

The First Circuit has held that anti-injunction language like the HEA's

7

> protects the agency from interference with its internal workings by judicial orders attaching agency funds, etc., but does not provide blanket immunity from every type of injunction. In particular, it should not be interpreted as a bar to judicial review of agency actions that exceed agency authority where the remedies would not interfere with internal agency operations.

Ulstein Mar., Ltd. v. United States, 833 F.2d 1052, 1057 (1st Cir. 1987); id. at 1053 (analyzing language in 15 U.S.C. § 634(b)(1) prohibiting an injunction against the Small Business Administration); see also 15 U.S.C. § 634(b)(1) ("no attachment, injunction, garnishment, or other similar process, mesne or final, shall be issued against the Administrator or his property"); Vara v. Devos, No. 19-cv-12175, 2020 WL 3489679, at *20 (D. Mass. June 25, 2020) ("federal district and circuit courts across the country have 'concluded the APA grants federal courts subject matter jurisdiction over cases seeking declaratory and injunctive relief for injuries caused by the Secretary's decisions made under the HEA.'" (quoting Adams v. Duncan, 179 F. Supp. 3d 632, 640 (S.D.W. Va. 2016))).

Here, the Court finds that it has jurisdiction to consider whether Plaintiffs are entitled to aspects of their requested relief under its APA Claim (Claim II). See [Compl. ¶¶ 90–102].[4] Specifically, the Court has jurisdiction to consider whether, under the APA, Defendant should be (1) enjoined from terminating the Plaintiffs' participation in Title IV, and (2) ordered to continue Plaintiffs' eligibility to participate in Title IV programs while the Court reviews this matter and until a final determination has been made by Defendant after affording the school a hearing. See [ECF No. 5 at 2]; see also Vara, 2020 WL 3489679, at *20. It does not have jurisdiction, however, to order Defendant to process and pay reimbursements. See [ECF No. 5 at 2]; see also

---

[4] In Plaintiffs' reply, they make no argument and thus appear to concede that the Court does not have jurisdiction to impose an injunction pursuant to its mandamus claim. See [ECF No. 19 at 8–10]. Similarly, Plaintiffs do not provide any basis for jurisdiction for injunctive relief pursuant to their declaratory judgment claim, which is based on Defendant's alleged violation of HEA regulations. See [id.].

5 U.S.C. § 702 ("An action in a court of the United States seeking relief *other than money damages* and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party") (emphasis added); Ulstein, 833 F.2d at 1057 (HEA injunction prohibition "*protects the agency from* interference with its internal workings by judicial *orders attaching agency funds*, etc.") (emphasis added).

### B. Preliminary Injunction

#### 1. Legal Standard

The Court employs a four-factor analysis in evaluating a motion for a preliminary injunction. Those factors are:

> (1) the likelihood of success on the merits; (2) the potential for irreparable harm [to the movant] if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest.

Esso Std. Oil Co. v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006) (internal quotation marks omitted).

> The party seeking the preliminary injunction bears the burden of establishing that these four factors weigh in its favor . . . . The sine qua non of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity.

Id. (internal quotation marks and citation omitted).

#### 2. Analysis

As described below, based on the current record, the Court finds that Plaintiffs were not eligible participants in Title IV programming at the time that the events in question occurred, and

they are therefore unlikely to succeed on their claim that they were entitled to a hearing and that Defendant violated the APA in denying one. Thus, they are not entitled to the injunctive relief sought.

34 C.F.R. § 668.14(a)(1) provides that "[a]n institution may participate in any Title IV . . . program[] only if the institution enters into a written program participation agreement with the Secretary." As relevant here, Section 668.14(g) further states that

> [a]n institution's program participation agreement *automatically* expires on the date that . . . [t]he institution changes ownership that results in a change in control as determined by the Secretary under 34 CFR part 600.

34 C.F.R. § 668.14(g)(1) (2021).

At the time at issue, 34 C.F.R. § 600.31(a)(1)–(2) provided that

> (1) Except as provided in paragraph (a)(2) of this section, a . . . private for-profit . . . institution that undergoes a change in ownership that results in a change in control ceases to qualify as an eligible institution upon the change in ownership and control. A change of ownership that results in a change in control includes any change by which a person who has or thereby acquires an ownership interest in the entity that owns the institution or the parent of that entity, acquires or loses the ability to control the institution.
>
> (2) If a . . . private for-profit, . . . institution has undergone a change in ownership that results in a change in control, the Secretary may, under the provisions of § 600.20(g) and (h), continue the institution's participation in the title IV, HEA programs on a provisional basis, provided that the institution submits, under the provisions of § 600.20(g), a materially complete application—(i) No later than 10 business days after the change occurs.

Id.

Here, it is undisputed that DeNicola acquired the School on November 1, 2021. See [ECF No. 19 at 3]. It is also undisputed that DeNicola failed to notify the Department of the acquisition, and Plaintiffs do not appear to argue that the change in ownership was not also a change in control. [ECF No. 5 at 5 ("the School notified the Division of Professional Licensure of the Commonwealth of Massachusetts but did not formally notify the Department [of

10

Education], believing the transaction was exempt under 34 C.F.R. § 600.31(e)")]; see also [Compl. ¶ 24 ("the School did not notify the Department of the change in control at the time because it believed Ms. DeNicola's purchase constituted an exempt transaction")].[5] Moreover, there is no evidence that any application for provisional participation in Title IV programming was provided within ten business days of November 1, 2021.  See 34 C.F.R. § 600.31(a)(2). Accordingly, Plaintiffs' participation and eligibility automatically lapsed on November 1, 2021. Id. § 600.31(a)(1).

Despite the fact that Plaintiffs' participation in and eligibility for Title IV programming automatically lapsed, Plaintiffs argue that Defendant violated the APA and denied them due process by "denying the School a required hearing after the Department placed a limitation on its participation in Title IV HEA programs[,] . . . because it was in excess of statutory authority, short of statutory right, or not in accordance with the law." [ECF No. 19 at 8 (citing 5 U.S.C. §§ 706(2)(A), (C)].[6]  More specifically, Plaintiffs argue that

---

[5] Although Plaintiffs state that DeNicola believed that the change in ownership was an "excluded transaction," see, e.g., [ECF No. 19 at 8–9]; see also 34 C.F.R. § 600.31(e), Plaintiffs do not provide evidence to support a finding that it was in fact an excluded transaction, see [ECF No. 5 at 5 (arguing only that Plaintiffs believed the transaction was exempt); ECF No. 19 at 8–9 (same)], and it is Plaintiffs burden to do so for a preliminary injunction, see Esso Std. Oil Co., 445 F.3d at 18.  Nor did they report the transaction as required even if it were exempt.  See 34 C.F.R. § 600.31(e).

The Court also notes that Plaintiffs were on notice of the change of ownership issue at least as early as October 2022, [ECF No. 19 at 3], and despite the uncertainty, proceeded to make the payments for which it now requests reimbursement, [see id. (payments for which it requests reimbursement began in January 2023)]; see also [ECF No. 1-9 at 2–3 (explaining that Plaintiffs were on notice of the change of ownership issue in October 2022 but disagreed with the finding)].

[6] The APA provides that the Court

11

> [i]t is axiomatic that the Department's rejection of the School's claim for reimbursement, stop payment order, determination that the School has lost its eligibility, and requirement that the School obtain surety constitute limitations under 34 C.F.R. § 668.94,

[ECF No. 5 at 14], and that it was therefore entitled to the procedures set forth in 34 C.F.R. § 668.86, [id]; see also [ECF No. 19 at 10].

34 C.F.R. § 668.14 provides that "[e]xcept as provided in paragraph[] (g) . . . of this section," described above, "the Secretary terminates a program participation agreement through the proceedings in subpart G of this part." 34 C.F.R. § 668.14(i)(1). Subpart G "establishes regulations for [certain] actions with respect to *a participating institution*," id. § 668.81(a) (emphasis added), including limitations and terminations of participation, id. § 668.81(a)(3). It includes both 34 C.F.R. § 668.86, which requires notice and a hearing for limitation or termination proceedings, see id. § 668.86(b), as well as 34 C.F.R. § 668.94, which defines limitations, including those Plaintiffs aver were placed on them by Defendant here, see id. § 669.94; [ECF No. 19 at 10].

As described above, Plaintiffs' participation in and eligibility for Title IV programming automatically expired under 34 C.F.R. §§ 600.31(a)(1) and 668.14(g), and thus they were not a participating and eligible institution for purposes of Subpart G. See supra; see also San Juan City College, Inc. v. United States, 74 Fed. Cl. 448, 453–54 (2006) (Department of Education "could not have terminated" a program participation agreement because the agreement "automatically expired" under, among other things, 34 C.F.R. § 668.14); id. at 454 ("when

---

> shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be -- (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . [or] (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.

5 U.S.C. § 706(2)(A), (C).

Case 1:23-cv-12461-ADB   Document 20   Filed 12/07/23   Page 13 of 13

[Plaintiff's] . . . [participation agreement] automatically expire[d] . . . [it] no longer had an active [participation agreement] for the Department of Education to terminate or suspend through procedures of any sort, including notice or hearing procedures.").[7] Thus, because Plaintiffs have not shown that they are likely to succeed on their APA argument that Defendant denied them due process by refusing a hearing under 34 C.F.R. § 668.86, the Court denies their request for a preliminary injunction.[8]

### III.   CONCLUSION

Accordingly, Plaintiffs' request for a preliminary injunction, [ECF No. 4], is **DENIED**.

**SO ORDERED.**

December 7, 2023                                           /s/ Allison D. Burroughs
                                                          ALLISON D. BURROUGHS
                                                          U.S. DISTRICT JUDGE

---

[7] Similarly, because Plaintiffs were automatically not eligible for Title IV programming as of November 1, 2023, see supra; see also 34 C.F.R. § 600.31(a)(1), there was no "action" to terminate its eligibility under 34 C.F.R. § 600.41, see 34 C.F.R. § 600.41(c)(1) ("An action to terminate and limit the eligibility of an institution as a whole or as to any of its locations or educational programs is initiated in accordance with 34 CFR 668.86(b) and becomes final 20 days after the Secretary notifies the institution of the proposed action, unless the designated department official receives by that date a request for a hearing or written material that demonstrates that the termination and limitation should not take place").

[8] Because the Court finds that Plaintiffs have not shown that they are likely to succeed on the merits of their APA claim, it does not consider the remaining preliminary injunction factors. See Esso Std. Oil Co., 445 F.3d at 18.

13